UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALFREDO C. JR.,[1]<br><br>              Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | No. 4:18-CV-05154-EFS<br><br>**ORDER DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION** |

Before the Court, without oral argument, are cross summary-judgment motions, ECF Nos. 11 and 13.[2] Plaintiff Alfredo C. appeals the Administrative Law Judge's (ALJ) denial of benefits.[3] Plaintiff contends the ALJ: (1) erred in finding that Plaintiff's psoriatic arthritis and vision impairments neither met nor medically equaled a listing; (2) erred in rejecting the opinion of treating physician Cheryl Hipolito; (3) failed to evaluate the medical opinions of consultative examining ophthalmologists Marvin Palmer and Cory Hansen; (4) improperly rejected

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* LCivR 5.2(c). When quoting the Administrative Record in this order, the Court will substitute "Plaintiff" for any other identifier that was used.
[2] ECF Nos. 14 & 19.
[3] *See generally* ECF No. 14.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 1

Plaintiff's subjective testimony.[4] The Court has reviewed the administrative record and the parties' briefing. For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment.

## I. <u>Standard of Review</u>

On review, the Court must uphold the ALJ's determination that Plaintiff is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.[5] Substantial evidence means more than a mere scintilla, but less than a preponderance.[6] It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[7] The Court will also uphold the ALJ's reasonable inferences and conclusions drawn from the record.[8]

In reviewing a denial of benefits, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision.[9] That said, the Court may not substitute its judgment for that of the Commissioner.[10] If the evidence supports more than one rational interpretation, a reviewing court must uphold the ALJ's decision.[11] Further, the Court "may not reverse an ALJ's decision on account of an error that is harmless."[12] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

---

[4] *Id.*
[5] *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985)).
[6] *Id.* at 1110–11 (citation omitted).
[7] *Id.* (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.2009)).
[8] *Id.* (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.2008)).
[9] *Id.; See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).
[10] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).
[11] *Id.*
[12] *Molina*, 674 F.3d at 1111 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

nondisability determination."[13] The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.[14]

## II. <u>Five-Step Disability Determination</u>

The ALJ uses a five-step sequential evaluation process to determine whether an adult claimant is disabled.[15] The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, however, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

Step one assesses whether the claimant is currently engaged in a substantial gainful activity.[18] If the claimant is, benefits will be denied.[19] If not, the ALJ proceeds to the second step.[20]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limit the claimant's physical or mental ability to do basic work activities.[21] If the claimant does not, the disability claim is denied.[22] If the claimant does, the evaluation proceeds to the third step.[23]

Step three compares the claimant's impairment to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[24] If the impairment meets or equals one of the listed impairments, the claimant is

---

[13] *Id.* at 1115 (citation omitted).
[14] *Id.* at 1111 citing (*Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).
[15] *See* 20 C.F.R. §§ 404.1520, 416.920.
[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).
[17] *Id.*
[18] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).
[19] 20 C.F.R. §§ 404.1520(b), 416.920(b).
[20] *See id.*
[21] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).
[22] 20 C.F.R. §§ 404.1520(c), 416.920(c).
[23] *See id.*
[24] 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). *See* 404 Subpt. P App. 1.

conclusively presumed to be disabled.[25] If the impairment does not, the evaluation proceeds to the fourth step.[26]

Step four assesses whether the impairment prevents the claimant from performing work he or she has performed in the past by determining the claimant's residual functional capacity (RFC).[27] If the claimant is able to perform his or her previous work, the claimant is not disabled.[28] If the claimant cannot perform this work, the evaluation proceeds to the fifth step.[29]

Step five, the final step, assesses whether the claimant can perform other work in the national economy in light of his or her age, education, and work experience.[30] The Commissioner has the burden to show (1) that the claimant can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy" which the claimant can perform.[31] If both of these conditions are met, the disability claim is denied; if not, the claim is granted.[32]

### III. Facts, Procedural History, and the ALJ's Findings

Plaintiff was born on June 30, 1985.[33] He finished high school through the tenth grade and has not attained his GED.[34] He lives with his parents and has never had a driver's license.[35] He has never had consistent employment.[36]

On January 3, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for

---

[25] 20 C.F.R. §§ 404.1520(d), 416.920(d).
[26] 20 C.F.R. §§ 404.1520(e), 416.920(e).
[27] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
[28] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
[29] *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
[30] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
[31] *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (1984); 20 C.F.R. §§ 404.1520(g), 416.920(g).
[32] 20 C.F.R. §§ 404.1520(g), 416.920(g).
[33] ECF No. 14 at 2.
[34] AR 103.
[35] AR 102–03.
[36] AR 103–04.

supplemental security income.[37] In both applications, Plaintiff alleged disability beginning on July 1, 2011.[38] Plaintiff's claims were initially denied and also denied upon reconsideration.[39] Plaintiff requested a hearing before an ALJ, which was held on April 23, 2015.[40]

On September 11, 2015 ALJ Moira Ausems rendered a fully favorable decision, concluding that Plaintiff was disabled since the amended onset date of January 3, 2013.[41] The Appeals Council then vacated ALJ Ausems' decision and remanded the case for further proceedings.[42] An additional hearing was held on October 20, 2016 before ALJ Stephanie Martz.[43] On May 3, 2017, ALJ Martz rendered a decision denying Plaintiff's claim.[44]

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date.[45]

At step two, the ALJ found Plaintiff had the following severe impairments: psoriatic arthritis, cirrhosis, lateral epicondylitis, bilateral keratoconus, acute hydrops, corneal ectasia, obesity, depression, anxiety, personality disorder, and attention deficit hyperactivity disorder.[46] The ALJ also found that Plaintiff's dorsal lumbar strain, degenerative disk disease, asthma, intermittent explosive disorder, cannabis dependence, and methamphetamine dependence were not severe impairments.[47]

---

[37] AR 317–22, 323–39.
[38] AR 317–22, 323–39.
[39] AR 204–18, 221–32.
[40] AR 40–62.
[41] AR 196.
[42] AR 199–202.
[43] AR 63.
[44] AR 32.
[45] AR 21.
[46] *Id.*
[47] AR 22–23.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 5

At step three, the ALJ found that Plaintiff did not have an impairment that met the severity of a listed impairment.[48]

At step four, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[49] He can lift and/or carry 20 pounds occasionally and 10 pounds frequently.[50] He can sit up to eight hours and stand and/or walk for one hour over an eight-hour workday with regular breaks.[51] He has an unlimited ability to push/pull within those exertional limitations.[52] He can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds.[53] He can frequently balance and stoop.[54] He can occasionally kneel, crouch, and crawl.[55] He can frequently handle and finger.[56] He must avoid concentrated exposure to wetness, temperature extremes, and vibration.[57] He must avoid even moderate exposure to hazards including unprotected height and machinery.[58] He can work with items that are over one inch in size.[59] He cannot be required to drive.[60] He can understand, remember, and carry out short and simple instructions.[61] He can have occasional contact with coworkers, supervisors, and the general public.[62] He needs a routine and predictable work environment.[63]

---

[48] AR 22.
[49] AR 24.
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] AR 24.
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] AR 24.
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.*

At step five, the ALJ found that Plaintiff had no past relevant work experience.[64] However, the ALJ found that there are jobs in the national economy that plaintiff can perform, considering his age, education, work experience, and RFC.[65]

The Appeals Council denied Plaintiff's request for review,[66] making the ALJ's decision the final decision for purposes of judicial review.[67] Plaintiff filed this lawsuit on September 12, 2018.[68]

### IV. Applicable Law & Analysis

### A. The ALJ did not err in determining that Plaintiff's psoriatic arthritis and vision problems did not meet or equal a listed impairment.

Substantial evidence supports the ALJ's decision that Plaintiff's psoriatic arthritis and vision problems did not meet or equal any listed impairments. Plaintiff did not establish that he met the characteristics of any listed impairment[69] nor did he establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of the listed impairment.[70] Therefore, the ALJ did not err at step three.

> 1. Substantial evidence supported the ALJ's determination that Plaintiff's psoriatic arthritis did not meet or equal Listing 14.09D.

The ALJ's determination that Plaintiff did not exhibit two of the "constitutional symptoms," as required by Listing 14.09D,[71] is supported by the absence of those symptoms in the record. Listing 14.09D is met where: (1) the

---

[64] AR 30.
[65] AR 31.
[66] AR 1–6.
[67] 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.
[68] ECF No. 1.
[69] *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
[70] *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999) (quoting 20 C.F.R. § 404.1526). *See also* 20 C.F.R. § 416.926(a).
[71] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.09D.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 7

individual exhibits repeated manifestations of inflammatory arthritis; (2) at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss); and (3) has a marked limitation in activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.[72] Plaintiff concedes that the record shows no involuntary weight loss or fever, but argues that he suffered from severe fatigue and malaise.[73] The ALJ noted that Plaintiff had "some" fatigue at times, but not severe fatigue.[74] Specifically, the ALJ noted that in late 2014, June 2015, and July 2016, Plaintiff did not complain of fatigue.[75] Review of the record shows only three additional documented complaints of fatigue, one of which was only moderate fatigue.[76] Therefore, the ALJ's determination that Plaintiff did not experience severe fatigue is supported by the lack of fatigue noted in the record.[77] In light of this finding, the ALJ did not err in concluding that Plaintiff did not meet Listing 14.09D. Although Plaintiff offers a rational interpretation of the evidence, it is the ALJ's rational interpretation that controls.[78]

---

[72] *Id.*
[73] ECF No. 11 at 5–13.
[74] The ALJ cites an example, exhibit 9F. 9F-35, which shows cough, fatigue, and fever. AR 26. However, those symptoms were associates with a cold. AR 574. Plaintiff also reported fatigue in September 2013, associated with his psoriatic arthritis. AR 528.
[75] "Malaise" is defined as "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 14.09D. The Court need not address whether Plaintiff suffered from malaise because the Court has determined that the substantial evidence supports the ALJ's determination that Plaintiff did not suffer from fatigue, involuntary weight loss, or fever.
[76] Plaintiff noted fatigue as a 7 on a scale of 1-10 in August 2015 and March 2016. ECF Nos. 826 & 830. Plaintiff noted fatigue as moderate, as a 5 on a scale of 1-10 in December 2015. AR 828.
[77] "Severe fatigue" is defined as "a frequent sense of exhaustion that results in significantly reduced physical activity or mental function." 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 14.09D.
[78] *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 8

Further, substantial evidence in the record supports the ALJ's determination that Plaintiff did not meet Listing 14.09D because Plaintiff had no "marked" limitation in activities of daily living, maintaining social functioning, or completing tasks in a timely manner. A "marked limitation" is one that seriously interferes with a claimant's ability to function.[79] The ALJ relied on Dr. Irving Kushner's testimony that Plaintiff's "most telling impairment" was his difficulty standing and walking.[80] Dr. Kushner agreed with examining physician Dr. James Opara's opinion that Plaintiff was limited to standing less than two hours over an eight-hour work day.[81] Dr. Kushner also stated there was "some limitation of function of his hand" due to some tenderness in his left thumb noted in February of 2013.[82] Overall, Dr. Kushner testified "I don't think he's had - - has [sic] much limitation at this point, much activity of the arthritis."[83] In other words, Dr. Kushner noted no serious limitations in Plaintiff's ability to complete daily living activities like household chores,[84]

---

[79] The word "marked" is not defined in the Code of Federal Regulations as it relates to psoriatic arthritis. However, it is defined elsewhere in the Regulations, pertaining to another disorder:

> Marked limitation means that the symptoms and signs of your hematological disorder interfere seriously with your ability to function. Although we do not require the use of such a scale, "marked" would be the fourth point on a five-point scale consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation. . . .

20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 7.00.

[80] AR 28, 85–88.
[81] AR 86.
[82] AR 85.
[83] *Id.* Plaintiff argues that Dr. Kushner originally concluded that he "should" meet a listing. See ECF No. 11 at 8. However, upon further questioning, the ALJ concluded: "I mean he's got psoriatic arthritis, but it just doesn't seem to come close to the listing." AR 85.
[84] A definition of "activities of daily living" is provided in the Code of Federal Regulations, in reference to Listing 7.00:

> Activities of daily living include, but are not limited to, such activities as doing household chores, grooming and hygiene, using a post office, taking public transportation, or paying bills. We will find that you have a "marked" limitation in activities of daily living if you have a serious limitation in your ability to maintain a household or take public transportation because of symptoms such as pain, severe fatigue, anxiety, or difficulty concentrating, caused by your hematological disorder

function sociallly, or concentrate due to his psoriatic arthritis symptoms.[85] Further, the ALJ accounted for the limitations noted by Dr. Kushner in Plaintiff's RFC assessment.[86] In light of this finding, the ALJ did not err in concluding that Plaintiff did not meet Listing 14.09D.

Although Plaintiff correctly points out that a "boilerplate finding" is insufficient to support a conclusion that his impairment does not meet or equal a listing,[87] the ALJ made all necessary findings. So long as the ALJ discusses and evaluates the evidence supporting her conclusion, the ALJ need not do so while discussing step three.[88] The ALJ discussed and evaluated evidence supporting her conclusion that Plaintiff did not meet Listing 14.09D for his psoriatic arthritis in the section where she discusses Plaintiff's RFC.[89] Specifically, the ALJ discussed the Plaintiff's manifestations of arthritis, whether the constitutional signs were

---

    (including complications of the disorder) or its treatment, even if you are able to perform some self-care activities.

20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 7.00.

[85] A definition of "completing tasks" is also provided in the Code of Federal Regulations:

    Completing tasks in a timely manner involves the ability to sustain concentration, persistence, or pace to permit timely completion of tasks commonly found in work settings. We will find that you have a "marked" limitation in completing tasks if you have a serious limitation in your ability to sustain concentration or pace adequate to complete work-related tasks because of symptoms, such as pain, severe fatigue, anxiety, or difficulty concentrating caused by your hematological disorder (including complications of the disorder) or its treatment, even if you are able to do some routine activities of daily living.

*Id.*

[86] The ALJ proceeds to an RFC assessment concerning impairments that are severe but do not meet a listing. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

[87] *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir.2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990)).

[88] *Lewis*, 236 F.3d at 513 (an ALJ is only required to "discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'").

[89] *See* AR 26–27, 29.

exhibited, and how his psoriatic arthritis limited him.[90] Therefore, the ALJ did not fail to make the necessary findings.

### 2. Substantial evidence supported the ALJ's determination that Plaintiff's vision impairments did not meet or equal any listing.

The ALJ's conclusion that Plaintiff's visual impairments did not meet listings 2.02, 2.03, or 2.04 was supported by substantial evidence in the record. The record does not indicate that Plaintiff's remaining vision in his better eye after best correction was 20/200 or less as required under Listing 2.02.[91] The record also does not show contraction of the visual field in the better eye with the widest diameter subtending an angle around the point of fixation no greater than 20 degrees, an MD of 22 decibels or greater,[92] or a visual field of 20% or less, as required by Listing 2.03.[93] Nor does the record show loss of visual efficiency or visual impairment in the better eye with a visual efficiency percentage of 20 or less after best correction or a visual impairment value of 1.00 or greater after best correction, as required by Listing 2.04.[94] Therefore, the ALJ did not err in concluding that Plaintiff failed to meet a listing regarding his vision impairments.[95]

Substantial evidence also supports the ALJ's conclusion that Plaintiff's vision impairments were not "medically equal" to a listing. For Plaintiff to qualify for benefits by showing that his combination of impairments is equivalent to a listed impairment, he must present medical findings "equal in severity to all the criteria for the one most similar listed impairment."[96] If a claimant has more than one

---

[90] *Id.*
[91] AR 73–75, 680.
[92] AR 73–75, 677.
[93] AR 73–75, 677–79.
[94] AR 73–75, 677–79.
[95] AR 73–75, 677–79.
[96] *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). *See also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 11

impairment, the ALJ must determine "whether the combination of [the] impairments is medically equal to any listed impairment."[97] The claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects."[98] A finding of equivalence must be based on medical evidence only.[99]

The ALJ did not discuss the combined effects of Plaintiffs impairments, nor compare them to any listing.[100] However, Plaintiff has offered no theory as to how his vision impairment is affected by his psoriasis or any of his other impairments.[101] Nor has Plaintiff pointed to evidence that his combined impairments equals a listed impairment.[102] Further, the ALJ did not indicate that he found the record insufficient to properly evaluate the evidence.[103] Therefore, the ALJ did not err in finding that Plaintiff did not medically equal a listing.

**B.   The ALJ did not err by improperly weighing the medical evidence.**

   1.   <u>The ALJ properly rejected the opinion of Dr. Cheryl Hipolito.</u>

The Social Security Administration favors the opinion of a treating physician, like Dr. Cheryl Hipolito.[104] In weighing medical source opinions in Social Security cases, the Court distinguishes among three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor

---

[97] 20 C.F.R. § 404.1526(a).
[98] *Lewis*, 236 F.3d at 514 (citing *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir.1995)).
[99] 20 C.F.R. § 404.1529(d)(3).
[100] *Lewis*, 236 F.3d at 514.
[101] *Id.*
[102] *Id.*
[103] *Id.*
[104] *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527).

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 12

examine the claimant.[105] Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians.[106]

The ALJ provided clear and convincing reasons to support her dismissal of Dr. Hipolito's opinions.[107] Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[108] An ALJ meets this burden by providing a detailed and thorough summary of the facts and conflicting clinical evidence, stating their interpretation thereof, and making findings.[109]

The ALJ found the opinions of Dr. Hipolito unsupported by the objective clinical findings, the claimant's treatment history, and his performance on physical examinations.[110] These findings provide a specific and legitimate basis for the ALJ to discount Dr. Hipolito's opinions in favor of other opinions which the ALJ found better supported by the evidence and more consistent with the record as a whole.[111]

---

[105] *Id.*
[106] *Id.* ("Additional factors relevant to evaluating any medical opinion include: the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "other factors," such as the degree of understanding a physician has of the other information in the case record, the Social Security Administration's disability programs, and the Administration's evidentiary requirements") (citation omitted).
[107] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).
[108] *See Orn*, 495 F.3d at 632 (citations omitted).
[109] *Id.* (citations omitted); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation omitted).
[110] 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (consistency is a factor in weighing doctors' opinions). Plaintiff also states that "the ALJ erred by rejecting the opinion of Dr. Hipolito by relying on Dr. Kushner's opinion—a non-treating physician." However, the "reports of consultative physicians called in by the Secretary may serve as substantial evidence." *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989). Further, the ALJ may discredit a treating physician's opinion by providing adequate reasons. *See Orn*, 495 F.3d at 632 (citations omitted).
[111] *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001).

Although Plaintiff offers a rational interpretation of the evidence, it is the ALJ's rational interpretation that controls.[112]

### 2. The ALJ did not err in failing to address ophthalmologists Dr. Marvin Palmer and Dr. Corey Hansen by name.

On April 24, 2013, Dr. Marvin Palmer opined Plaintiff was blind in his right eye, with limited vision in his left.[113] Although the ALJ did not use Dr. Palmer's name, the ALJ cites to Dr. Palmer's report, report "6F," and concludes that it inaccurately stated that Plaintiff was "legally blind."[114] If a treating physician's opinion is contradicted by another physician, an ALJ may reject the treating physician's opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record.[115] The ALJ gave a specific and legitimate reason for discrediting Dr. Palmer's opinion that in 2013 Plaintiff was legally blind in his right eye: Dr. Patrick McCaffery, the testifying doctor, pointed out that Dr. Palmer's test was done without assessing Plaintiff's corrected vision.[116] Therefore, the ALJ properly discounted Dr. Palmer's opinion that Plaintiff was legally blind in his right eye.

The ALJ did not specifically discuss whether she discredited Dr. Palmer's opinion that in 2013 Plaintiff had limited vision in his left eye. However, the ALJ did

---

[112] *Thomas*, 278 F.3d at 954 (citation omitted). Plaintiff cites to *Trevizo v. Berryvill* to support his argument that treatment records need not reflect symptoms that an individual invariably suffers. *Trevizo* is distinguishable, where the majority of the Trevizo's records noted that Trevizo's psoriatic plaques were severe and only one report stated that Trevizo's feet showed a normal appearance. *See Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017). Plaintiff has not demonstrated that his records reflected brief, symptom-free periods. *See e.g.*, *Lester v. Chater*, 81 F.3d 821, 833 (1995).
[113] AR 522.
[114] AR 27 ("Dr. McCaffery testified that the references in the record to the claimant being legally blind (3F3-4, 6F, 11F, 14F, 18F, and 20F19) were inaccurate as they did not reflect the claimant's best corrected vision").
[115] *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (citation omitted).
[116] AR 521. Dr. McCaffery testified that "legal blindness is performed with best possible correction and it's better than 20/200 in the better eye." AR 74.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 14

not explicitly or implicitly reject that contention.[117] An ALJ need not discuss every piece of evidence, rather an ALJ must explain why "significant probative evidence has been rejected."[118] The ALJ agreed that prior to receiving a corneal transplant in April 2016 Plaintiff's vision impairments were worse.[119] The ALJ focused her analysis on Plaintiff's improved condition in his right eye after his right corneal transplant in April 2016 and the limitations Plaintiff experienced at the time of the hearing.[120] Indeed, Dr. McCaffery also testified that Plaintiff's left eye was nonfunctional, which the ALJ incorporated.[121] Because the ALJ did not discount Dr. Palmer's 2013 opinion regarding Plaintiff's left eye, the ALJ did not err in failing to specifically discuss it.

The ALJ also did not discount the opinion of Dr. Corey Hansen. After Plaintiff's corneal transplant in 2015, Dr. Hansen concluded that Plaintiff's "condition ha[d] improved" in his right eye since surgery.[122] Dr. Hansen also diagnosed keratoconus, corneal ectasia, and corneal scar or opacity in his left eye.[123] Dr. Hansen concluded that the left eye was resistant to supportive treatment, the condition had worsened, and "spectacles will not adequately restore vision to functional level."[124] Although the ALJ does not mention Dr. Hansen by name, the ALJ did not explicitly or implicitly reject Dr. Hansen's conclusion.[125] As stated, the ALJ agreed that Plaintiff's condition had improved in his right eye after the corneal

---

[117] *See* AR 27.
[118] *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).
[119] *See* AR 27.
[120] The ALJ need not focus on Plaintiff's impairments at the beginning of the period in isolation if his condition has improved. *See Thomas*, 278 F.3d at 957 (affirming the denial of benefits where the ALJ's hypothetical to the vocational expert incorporated the treating physician's conclusion that the claimant's condition had improved).
[121] *See* AR 27.
[122] AR 679, 681.
[123] AR 680–81.
[124] AR 681.
[125] *See* AR 27.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 15

transplant and noted that vision in Plaintiff's left eye was significantly impaired.[126] Therefore, the ALJ did not discount Dr. Hansen's opinion and did not need to specifically discuss it by name.

Any error in failing to address Dr. Hansen's opinion is harmless error because the ALJ accounted for the limitations in Dr. Hansen's opinion in Plaintiff's RFC.[127] The ALJ incorporated Dr. McCaffery's opinion that Plaintiff could function monocularly, subject to the following restrictions: Plaintiff must avoid even moderate exposure to hazards including unprotected heights and machinery; he can work with items over one inch in size; he cannot be required to drive; his work environment must be routine and predictable.[128] In making those limitations, the ALJ cited to the portion of Dr. McCaffery's testimony that incorporated Dr. Hansen's report.[129] Therefore, any error was harmless because Dr. Hansen's opinion was incorporated into Plaintiff's RFC.

## C. The ALJ properly discounted Plaintiff's subjective testimony.

The ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony.[130] The ALJ found that there was objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.[131] The ALJ could therefore only reject the claimant's testimony about the severity of the symptoms by giving 'specific, clear

---

[126] *Id.*
[127] Such an error is harmless only where a reviewing court, "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("An ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony").
[128] The ALJ also took into account the opinion of Dr. Kushner, who thoroughly reviewed Dr. Hansen's report and considered it when making her RFC determination. AR 27.
[129] *See* AR 27.
[130] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).
[131] AR 25–28.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 16

and convincing reasons' for the rejection."[132] The ALJ provided two specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony: (1) the medical evidence did not substantiate Plaintiff's allegations; and (2) the record suggests that Plaintiff is more capable and active than he alleged.[133]

First, an ALJ may discount a claimant's symptom testimony that is unsupported by medical opinion evidence and examination findings.[134]

Second, although daily activities should generally not negatively impact a claimant's credibility, the ALJ permissibly discounted Plaintiff's credibility because those activities contradicted his other testimony and were transferable to a work setting.[135] The ALJ found that the fact that Plaintiff lived with friends was inconsistent with his testimony that he did not have any friends.[136] Further, the ALJ found the fact that Plaintiff watched his children regularly was inconsistent with his testimony that he spent most of his day sleeping, sitting, or lying around.[137] Further, the ALJ's finding that Plaintiff had no problems attending his appointments or maintaining his schedule as necessary is directly transferable to a work setting.[138] Therefore, the ALJ properly discounted Plaintiff's subjective testimony based on his daily activities.

## V. **CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes that the ALJ did not err in determining that Plaintiff's impairments did not equal a

---

[132] *Ghanim*, 763 F.3d at 1163 (citation omitted).
[133] *See* AR 25–28.
[134] *Stubbs-Danielson v. Asture*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (explaining that medical evidence is a relevant factor in determining the severity of the claimant's pain and its disabling effects).
[135] *Orn*, 495 F.3d at 639.
[136] *See* AR 25–28.
[137] *See id.*
[138] *See id.*

listing, fail to adequately weigh the medical evidence, nor improperly discount Plaintiff's subjective testimony.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**
2. The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.
3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.
4. The file shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this  20th  day of June 2019.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge
